IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DOCTORS NURSING & REHABILITATION CENTER, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No.  08-3096 |
| MICHAEL O. LEAVITT, in his capacity as United States Secretary of Health and Human Services, ) ) ) ) ) | |
| Defendant. ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motion to Dismiss (d/e 6) and Revival of Motion to Dismiss (d/e 12).  Defendant also filed a Motion for Leave to File Reply in Support of Motion to Dismiss (d/e 15), which Plaintiff opposes.  Because the Court finds the authority discussed in the Motion for Leave instructive in assessing its jurisdiction here, the Motion for Leave is allowed.  For the reasons stated below, the Motion to Dismiss and Revival of Motion to Dismiss also are allowed.

1

FACTS

According to the First Amended Complaint (d/e 9), Plaintiff operates a 120-bed skilled nursing facility in Illinois that is certified by Medicare and Medicaid. Medicare Part B provides supplemental insurance for hospital out-patient, physician, therapy, and other medical services. Under Medicare Part B, providers receive payment pursuant to a published fee schedule. Plaintiff has brought claims against Defendant, the Secretary of Health and Human Services, for alleged underpayment for pulse oximetry tests, which measure the level of oxygen saturation in an individual's blood.

Defendant has delegated day-to-day administration of the Medicare program to the Centers for Medicare and Medicaid Services (CMS), which contracts with insurance companies, referred to as fiscal intermediaries, to process claims made on behalf of Medicare beneficiaries. Health care providers submit claims for payment to a fiscal intermediary, and the fiscal intermediary determines whether Medicare covers the service at issue; if it does, the fiscal intermediary also determines how much the health care provider should receive as payment for this service. Plaintiff alleges that in 2005 and 2006, it submitted requests for payment for pulse oximetry tests that the fiscal intermediary paid at a lower rate than the one set forth in the

published fee schedule.

Specifically, Plaintiff alleges that the fiscal intermediary failed to pay it at the rate set forth in the SNF Therapy Fee Schedule. CMS maintains fee schedules for different types of providers, all of which are grouped in a single database, the Medicare Physician Fee Service Database. The SNF Therapy Fee Schedule sets fees for services provided by a skilled nursing facility. Plaintiff argues that under 42 U.S.C. § 1842(b)(8), Defendant is authorized to deviate from published fee schedules only if the fee amount in the schedule is inherently unreasonable. Plaintiff also argues that in 1999, Congress froze the fee schedule amounts then in place for all services but physician services. Defendant and his delegates no longer could use the inherent reasonableness provision to modify the fees paid for services unless they took particular procedural steps. According to Plaintiff, Defendant never has taken those steps.

Nonetheless, for single tests performed in a single encounter (billed as code 760) in 2005, Plaintiff received only $2.24 per test; for such tests performed in 2006, it received only $2.23. The allegedly frozen fee schedule set the rate at $21.43. Similarly, for multiple tests performed in a single encounter (billed as code 761) in 2005, it received $5.05; for such

tests performed in 2006, it received $5.03. The allegedly frozen fee schedule set the rate at $54.83.

Plaintiff filed a timely redetermination request before CMS for each of the claims it considered underpaid, but through its fiscal intermediary, CMS dismissed all of the requests for redetermination. Plaintiff then timely appealed these dismissals before the Qualified Independent Contractor (QIC). On either May 29, 2008 or February 14, 2008 (Plaintiff alleges May 29, 2008, which does not seem to fit the chronological sequence of events, and Defendant alleges February 14, 2008, which does), the QIC affirmed the dismissals and held: "a QIC's reconsideration of a contractor's dismissal of a redetermination request is final and not subject to any further review." First Amended Complaint (d/e 9), at 9. It also stated that Plaintiff had "no further appeal rights in this case." Id. On April 14, 2008, Plaintiff filed this action. On July 16, 2008, CMS reopened the QIC's decision. Plaintiff contends that this reopening was invalid because no statute or case law allows CMS to reopen a proceeding after a party files a lawsuit. Defendant subsequently moved to dismiss. After Plaintiff filed its First Amended Complaint, Defendant filed its Revival of Motion to Dismiss.

4

## ANALYSIS

Defendant has moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a case on which relief can be granted. As set forth below, the Court holds that it lacks jurisdiction. Finding no jurisdiction, the Court does not address Defendant's arguments under Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject matter jurisdiction. The Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the party who filed the complaint. Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995). The Court may consider evidence outside the complaint in deciding a Rule 12(b)(1) issue. Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993). Where a party questions the jurisdictional allegations, the party who filed the complaint must prove that the jurisdictional requirements have been met. Kontos v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987).

Before a service provider can obtain judicial review of its allegedly underpaid claims, it must exhaust administrative remedies and obtain a

"final decision" from Defendant. 42 U.S.C. § 1395ff(b)(1)(A); see also 42 U.S.C. § 405 (providing the statutory rules governing the Social Security Act, but per express incorporation by 42 U.S.C. § 1395ff(b)(1)(A), also applying to Medicare). Unless a provider obtains a "final decision," federal courts lack subject matter jurisdiction over its claims of error. Weinberger v. Salfi, 422 U.S. 749, 764 (1975); see also 42 U.S.C. § 1395ff(b)(1)(A); 42 U.S.C. § 1395ii; 42 U.S.C. § 405(h). The term "final decision" is statutorily undefined and left to Defendant "to flesh out by regulation." Weinberger, 422 U.S. at 766.

Under Defendant's regulations, the administrative review process differs depending on whether the fiscal intermediary's first decision was an "initial determination;" initial determinations are appealable, but other decisions are not. Contrast 42 C.F.R. § 405.924(b)(12) with 42 C.F.R. § 405.926(c). A decision on whether there was an underpayment of benefits under Medicare Part B is an initial determination. 42 C.F.R. § 405.924(b)(12). Decisions on the propriety of a particular method of computing a payment amount are not initial determinations. 42 C.F.R. § 405.926(c).

After the fiscal intermediary makes its decision -- whether or not it is

6

an initial determination -- a dissatisfied provider can request a redetermination. 42 C.F.R. § 405.940 & 405.942. If the fiscal intermediary decides that its prior decision was not an appealable initial determination, it dismisses the request for a redetermination. 42 C.F.R. § 405.952(b)(6). If the fiscal intermediary decides that its prior decision was an appealable initial determination, it evaluates the substance of the provider's argument and issues a redetermination decision. 42 C.F.R. § 405.948.

Here, the fiscal intermediary read Plaintiff's argument to pertain to the propriety of a particular method of computing a payment amount; specifically, it read Plaintiff's argument to challenge the propriety of the payment amounts set forth in the fee schedules. <u>Memorandum of Law in Support of Motion to Dismiss (d/e 7)</u>, Exhibit 5, <u>Nov. 8, 2007 Decision</u>. The fiscal intermediary thus determined that its decision was not an initial determination and dismissed Plaintiff's request for a redetermination.

A party that is disappointed with a dismissal or a redetermination decision can seek reconsideration by a QIC. 42 U.S.C. § 1395ff(c); 42 C.F.R. §§ 405.960, 405.962 & 405.974(b)(1). If the fiscal intermediary previously dismissed the request for redetermination and the QIC affirms

that decision, the QIC's decision is a final decision and not subject to further administrative review. 42 C.F.R. § 405.974(b)(3). The provider is then free to seek judicial review. That is what happened here, and the QIC's decision informed Plaintiff that it had no further administrative appeal rights.

If the QIC sustains a redetermination decision on the merits, however, a disappointed provider can request an ALJ hearing regarding the QIC's reconsideration decision. 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1002 & 405.1014. After the ALJ issues a decision, the administrative appeals process continues to a review by the Medicare Appeals Council (MAC). 42 C.F.R. § 405.1100. The MAC's decision is a final decision reviewable in federal court. 42 C.F.R. § 405.1136.

Because Defendant's agents continually treated Plaintiffs' issue as non-appealable, at the time it filed this suit, Plaintiff had exhausted administrative remedies and obtained a final decision. After Plaintiff filed suit, however, CMS administratively reopened the matter. Defendant explains that it now believes that Plaintiff's issues included an appealable question of underpayment, and thus the fiscal intermediary's first decision was in part an initial determination.

The Medicare regulations allow for the reopening of a redetermination in some circumstances. Under 42 C.F.R. § 405.980(a)(I), a contractor may reopen an action "to change a final determination or decision that resulted in either an overpayment or underpayment." A contractor may reopen and revise its redetermination upon its own motion within 1 year from the date of the redetermination "for any reason." 42 C.F.R. § 405.980(b)(1). CMS reopened this case July 16, 2008, less than a year from both Defendant's claimed date of decision -- February 14, 2008 -- and Plaintiff's -- May 29, 2008. Thus, accepting either date, the reopening was proper. The question is, did it change the Court's jurisdiction? If Plaintiff is now required to pursue a new round of administrative appeals to exhaust its administrative remedies, then this Court lacks jurisdiction.

Plaintiff is correct that generally, "the existence of jurisdiction is determined as of the filing of the complaint." Smith v. Widman Trucking & Excavating, Inc., 627 F.2d 792, 798-99 (7th Cir. 1980). As the Seventh Circuit has noted, "[i]f jurisdiction exists at the outset of a suit, subsequent events will not divest the court of jurisdiction." Id. at 799. Yet the Supreme Court has concluded that the requirement of a final administrative decision under 42 U.S.C. § 405 -- a prerequisite to jurisdiction here -- "is

not precisely analogous to the more classical jurisdictional requirements contained in such sections of Title 28 as 1331 and 1332." Weinberger, 422 U.S. at 766. This is because 42 U.S.C. § 405(l) allows Defendant to "specify such requirements for exhaustion as he deems serve his own interests in effective and efficient administration." Id. And exhaustion is

> required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

Id. at 766.

In Gao v. Gonzales, the Seventh Circuit considered another statutory administrative scheme -- that applicable to immigration matters. Gao, 464 F.3d 728 (7th Cir. 2006). By statute, federal courts have jurisdiction over immigration matters only after administrative "final orders of removal" are issued. Id. at 729; 8 U.S.C. § 1252. In Gao, the plaintiff filed suit in federal court after obtaining such a final order of removal, but a month later, the Board of Immigration Appeals reopened the administrative proceedings on its own motion. Gao, 464 F.3d at 729. The Seventh Circuit held that this reopening changed the status of its jurisdiction: because the

plaintiff no longer had a final order of removal, the court no longer was entitled to review the case under the statutory grant of jurisdiction. Id. at 729-30. It lacked jurisdiction and dismissed the case. Id. at 730; see also Lopez-Ruiz v. Ashcroft, 298 F.3d 886, 887 (9th Cir. 2002) (holding, in another immigration case, that the reopening of an administrative proceeding after the commencement of a federal suit "means there is no longer a final decision to review," and dismissing for lack of jurisdiction).

While the statutory scheme here differs from that in Gao, Gao establishes that post-filing events can change a court's jurisdiction if that jurisdiction is premised on a final administrative decision. Thus, the Court concludes that the general rules regarding the establishment of jurisdiction at the outset of a case do not prevent it from losing jurisdiction in cases such as this one, where jurisdiction is limited statutorily by an administrative definition of a final decision. Here, Defendant has defined the term "final decision" such that it can reopen an administrative decision even after a party has filed suit in federal court. See 42 U.S.C. § 1395ff(b)(1)(A); see also 42 C.F.R. § 405.980(b)(1). Because it did so here, Plaintiff no longer has a final decision, and this Court is not authorized to review its claims. Per 42 U.S.C. § 1395ff(b)(1)(A) and 42 U.S.C. § 405(g), this Court lacks

jurisdiction.

THEREFORE, Defendant's Motion for Leave to File Reply in Support of Motion to Dismiss (d/e 15), Motion to Dismiss (d/e 6), and Revival of Motion to Dismiss (d/e 12) are all ALLOWED.  The Clerk of Court is directed to docket the proposed Reply.  This case is dismissed without prejudice for lack of subject matter jurisdiction.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:   March 3, 2009

       FOR THE COURT:

                                      s/ Jeanne E. Scott
                                     JEANNE E. SCOTT
                    UNITED STATES DISTRICT JUDGE